J-S96002-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JUSTIN DWIGHT HERSHBERGER, | |
| Appellant | No. 1281 WDA 2015 |

Appeal from the Judgment of Sentence Entered March 24, 2015
In the Court of Common Pleas of Cambria County
Criminal Division at No(s):
CP-11-CR-0001254-2014
CP-11-CR-0001256-2014
CP-11-CR-0001257-2014

BEFORE:  BENDER, P.J.E., BOWES, J., and SOLANO, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED JUNE 28, 2017**

Justin Dwight Hershberger appeals from the March 24, 2015 judgment of sentence of an aggregate term of 6 to 12 years' incarceration, imposed after he was convicted of multiple counts of burglary, theft, and related offenses. Appellant challenges the sufficiency of the evidence to sustain his convictions, as well as the legality and discretionary aspects of his sentence. After careful review, we affirm Appellant's convictions, but vacate his judgment of sentence and remand for resentencing.

This Court previously summarized the facts of Appellant's case in our disposition of the appeal of his co-defendant, Nicholas Alan Myers:

> On February 16, 2014, the police arrived at the Summerhill Borough Fire Department and Summerhill Borough Municipal Building, which are approximately 100-200 feet apart,

based upon reports of break-ins. Upon investigation, the police determined that the perpetrators had attempted to enter the fire station, but were unable to gain access; however, the perpetrators were able to access a two-story storage building located next to the fire station by prying open the door. The perpetrators also pried open the door and entered the Summerhill Borough Municipal Building. The police also investigated a burglary at the South Fork Fire Department[1] on February 16, 2014, wherein the perpetrators forcibly pried open a door to gain access to the building and subsequently rummaged through several emergency vehicles. The police determined that numerous items had been stolen during the burglaries, including, *inter alia*, portable radios, chargers, metal gas cans, a cordless drill, a printer, a Keurig coffee maker, and a 32-inch Vizio television.

[1] The South Fork Fire Department is approximately five miles from the Summerhill Borough Municipal Building.

During an unrelated theft investigation, the police determined that [Appellant] was a person of interest in the burglaries. After obtaining consent to search the homes of [Appellant] and his father, the police discovered some of the stolen items at each home.

Natalee Dryzal ("Dryzal"), who has a child with Myers, stated that at around midnight on February 16, 2014, Myers and [Appellant] left Myers's mother's home together and returned a few hours later. When they returned, [Appellant] placed an unopened bag in Myers's bedroom. After Myers's mother left the home, Myers and [Appellant] opened the bag, which contained, *inter alia*, portable radios with yellow stickers on them. Myers and [Appellant] indicated that they got the radios from the "fire hall," after they had a "problem with the first place." Dryzal also stated that she accompanied [Appellant] when he attempted to sell a television.

***Commonwealth v. Myers***, No. 1273 WDA 2015, unpublished memorandum

at 1-2 (Pa. Super. filed October 24, 2016).

- 2 -

Following a joint trial in February of 2015, a jury convicted both Appellant and Myers of multiple counts of burglary,[1] attempted burglary,[2] theft by unlawful taking,[3] receiving stolen property,[4] and criminal mischief.[5] On March 24, 2015, Appellant was sentenced to an aggregate term of 6 to 12 years' imprisonment.[6] He filed a timely post-sentence motion, which was denied on July 31, 2015. Appellant then filed a timely notice of appeal, and also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court filed a Rule 1925(a) opinion on October 23, 2015.[7]

Appellant thereafter filed a brief with this Court (hereinafter, "Brief I") raising two claims for our review, a challenge to the sufficiency of the evidence to sustain his convictions, and a challenge to the discretionary aspects of his sentence. On January 19, 2017, we issued a memorandum

_____

[1] 18 Pa.C.S. § 3502(a)(4).

[2] 18 Pa.C.S. § 901(a).

[3] 18 Pa.C.S. § 3921(a).

[4] 18 Pa.C.S. § 3925(a).

[5] 18 Pa.C.S. § 3304(a)(5).

[6] Myers, who was sentenced alongside Appellant, received the same aggregate sentence for his convictions.

[7] During the pendency of this appeal, Appellant filed with this Court several motions and requests for extensions of time, which caused the delay in our disposition of his case.

decision finding those issues meritless, and affirming Appellant's judgment of sentence. Thereafter, Appellant filed a motion for an extension of time within which to file a petition for panel reconsideration, which we granted. Appellant then filed a petition for panel reconsideration on March 21, 2017, raising new claims challenging the legality of several of his sentences. On April 11, 2017, this Court issued an order granting panel reconsideration, withdrawing our January 19, 2017 memorandum, and setting a new briefing schedule. Appellant filed his new brief (hereinafter, "Brief II") on May 2, 2017, and the Commonwealth filed its responsive brief on May 24, 2017.

Thus, we herein address the following four issues, as set forth in both Appellant's Brief I and Brief II:

> I. Whether there was sufficient evidence to find [Appellant] guilt[y] beyond a reasonable doubt of the charges when there was not any direct evidence that he entered any of the structures nor was evidence sufficient for a jury to find that [Appellant] was guilty beyond a reasonable doubt that he committed any of the crimes.
>
> II. Whether the sentencing court abused its discretion when sentencing [Appellant], where the sentencing court did not properly consider that [Appellant] had a drug problem and mental health problems and where the sentencing court did not order [Appellant] to undergo a mental health evaluation to assist the sentencing court in fashioning an appropriate sentenc[e] considering [Appellant's] mental health.

Appellant's Brief I at 4.

> [III]. Whether the sentencing court imposed an illegal sentence when it sentenced [Appellant] on both a Burglary and for the underlying offenses which it was his intent to commit during the burglarious entry.

- 4 -

[IV.] Whether the sentences for [c]riminal [a]ttempt to [c]omit [b]urglary and [c]riminal [m]ischief should have merged for sentencing purposes where the criminal mischief was damage done to a door to a structure in an effort to burglarize the structure.

Appellant's Brief II at 4.

In Appellant's first issue, he challenges the sufficiency of the evidence to sustain his convictions for burglary, attempted burglary, theft by unlawful taking, and criminal mischief. To begin, we note our standard of review of such a claim:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. ***Commonwealth v. Moreno***, 14 A.3d 133 (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. ***Commonwealth v. Hartzell***, 988 A.2d 141 (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. ***Moreno, supra*** at 136.

***Commonwealth v. Koch***, 39 A.3d 996, 1001 (Pa. Super. 2011).

In this case, Appellant contends that the Commonwealth failed to offer sufficient proof that he was present at the scene of the burglaries, or that he entered the burglarized buildings. He stresses that "a person is guilty of burglary if he or she **enters** a building or occupied structure with the intent to commit a crime therein, unless he or she is licensed or privileged to enter." Appellant's Brief I at 15-16 (citing 18 Pa.C.S. § 3502(a)(4)) (emphasis added by Appellant). Appellant further avers that his other "related offenses" of attempted burglary, criminal mischief, and theft by

unlawful taking also required "evidence establishing [that] Appellant was present at the structures on the night in question, entered the property or physically damaged the property on February 16, 2014." *Id.* at 16. Appellant contends that the only evidence of his presence at, and/or entry into, the burglarized structures was "the biased and inconsistent testimony of Natalee Dryzal…." *Id.* He stresses that the items stolen "were common, non-identifiable items with no specific markings[,]" *id.*, and the Commonwealth did not present any fingerprint evidence, video surveillance footage, or eyewitnesses to the crimes. Consequently, Appellant concludes that the Commonwealth failed to produce sufficient evidence proving that he committed the above-stated offenses.

We disagree. Notably, in *Myers*, this Court addressed similar arguments made by Myers in challenging the sufficiency of the evidence to support his identical convictions. The *Myers* panel reasoned:

> The evidence, viewed in a light most favorable to the Commonwealth, established that on February 16, 2014, the police arrived at the Summerhill Borough Fire Department and Summerhill Borough Municipal Building, and determined that the perpetrators had entered the municipal building and a storage building next to the fire department by prying open the doors. N.T., 2/16/15, at 48-50, 53, 55, 59-60, 111-14, 128-32, 185-86, 190-91; *see also id*. at 83-84, 146-47 (wherein witnesses detail the amount of damages caused by the break-ins). The perpetrators took numerous items from the buildings, including copper wire, a drill, a Keurig coffee maker, portable radios and chargers, and gas cans. *Id*. at 67-70, 72-78, 101-05, 191. The perpetrators had also attempted to access the fire department, but were unable to pry open the door. *Id*. at 56, 58-59, 191. Further, the perpetrators additionally pried the door open at South Fork Fire Department, rummaged through various

emergency vehicles and stole, *inter alia*, radios which were countywide service radios used by police, fire, and EMS, a digital video recorder, and a 32-inch Vizio television. *Id*. at 109, 112-14, 118-21, 128-32, 141, 145; *see also id*. at 116-17 (wherein Mark Wadsworth, president of the South Fork Fire Department, testified that the radios were important because the department used them extensively to keep track of personnel).

Dryzal testified that Myers and [Appellant] were at Myers's mother's home in South Fork on the night in question. N.T., 2/17/15, at 15, 16-17. Dryzal stated that Myers and [Appellant] left the home together around midnight and returned a couple of hours later. *Id*. at 17-18, 23. Upon returning, Myers and [Appellant] possessed a bag that they placed in Myers's bedroom until his mother left the home. *Id*. at 18-19, 41. Thereafter, Myers and [Appellant] opened the bag. *Id*. at 19. Dryzall stated that the bag contained about four radios, with yellow stickers on them, chargers, and a digital recording device. *Id*. at 21, 23, 33. Dryzall indicated that Myers and [Appellant] removed the stickers from the radios and each kept one radio on their person. *Id*. at 22, 34-35. Further, Myers and [Appellant] indicated that they got the radios from the "fire hall," and that they had a "problem with the first place" so they went to the "second place." *Id*. at 31-32. Dryzall also stated that she subsequently left Myers's mother's home with [Appellant] to sell a television. *Id*. at 33.

The police found items from the Summerhill Borough and South Fork burglaries at [Appellant's] father's and [Appellant's] homes. *Id*. at 56-57; N.T., 2/16/15, at 193-95, 213-15. The evidence additionally indicated that the radios found at [Appellant's] home matched those stolen from the South Fork Fire Department. N.T., 2/17/15, at 98; N.T., 2/16/15, at 120, 123-25. Further, Justin Thomas testified that [Appellant] attempted to sell him a Keurig coffee maker a couple of weeks after the burglaries. N.T., 2/17/15, at 11.

Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we conclude that the evidence was sufficient evidence for the jury to find Myers guilty of the above-mentioned crimes as an accomplice of [Appellant]. Indeed, the evidence demonstrated that the perpetrators broke into three separate buildings, the South Fork Fire Department, a storage building at the Summerhill Borough Fire Department and the Summerhill Borough Municipal Building, and attempted to

break into the Summerhill Borough Fire Department building by prying open the doors. The evidence additionally demonstrated that Myers and [Appellant] together left Myers's mother's home around midnight, and indicated to Dryzall that they took radios from the "fire hall" after they had encountered problems at the "first place." While some of the items stolen from the buildings were found at [Appellant's] and his father's home, Myers was an active participant in the criminal enterprise, and was criminally responsible for actions of [Appellant] as an accomplice. *See* [*Commonwealth v.*] *Murphy*, 844 A.2d [1228,] 1237 [(Pa. 2004)] (noting that a reasonable inference of guilt may be made where the evidence, viewed in a light most favorable to the Commonwealth, establishes that the inference is more likely than not); *see also* [*Commonwealth v.*] *Gross*, 101 A.3d [28,] 35 [(Pa. 2014)] (stating that "even non-substantial assistance, if rendered with the intent of promoting or facilitating the crime, is sufficient to establish complicity[]"). Thus, because Myers was [Appellant's] accomplice, Myers was legally responsible for [Appellant's] crimes, and the evidence is sufficient to support Myers's convictions. *See Commonwealth v. Lambert*, 795 A.2d 1010, 1024 (Pa. Super. 2002) (concluding that appellant was legally responsible for his co-defendant's crimes where appellant acted as an accomplice to his co-defendant by driving his co-defendant to the scene of the burglary, and leaving the scene of the crime with the co-defendant); *Commonwealth v. Calderini*, 611 A.2d 206, 209 (Pa. Super. 1992) (stating that while there was no direct evidence placing the appellant at the scene of the robbery, "the evidence that he was driving the getaway car a short time after the robbery, that he falsely identified himself to police, and that he had in his possession fruits of the robbery, was sufficient to establish circumstantially that appellant was an accomplice in the commission of the robbery[]").

*Myers*, No. 1273 WDA 2015, unpublished memorandum at 15-18.

Our review of *Myers* reveals that Myers presented similar arguments as Appellant in attacking the sufficiency of the evidence to support his convictions for the same offenses for which Appellant was convicted. *See id.* at 11 (setting forth Myers's argument "that the Commonwealth did not

present evidence that he entered the Summerhill Borough Municipal Building, the storage building at the Summerhill Borough Fire Department, or the South Fork Fire Department"; also noting Myers's argument "that there was no evidence of anyone fleeing the scene or eyewitnesses placing [him] at the scene of the burglaries, fingerprints found at the buildings, or Myers['s] possessing tools to break into the buildings"; Myers's further claiming that Dryzel's testimony, alone, was insufficient evidence upon which to convict him). The **Myers** panel rejected these arguments, and concluded that the evidence was sufficient to convict him (as an accomplice) and Appellant (as a principal) of the above-stated crimes. Consequently, we likewise conclude that the evidence was sufficient to support Appellant's convictions.

Appellant's remaining issues challenge his sentence. We will begin by addressing his attacks on the legality of his sentence, set forth in issues III and IV above. First, Appellant challenges the legality of his two sentences for theft by unlawful taking, arguing that those convictions merged with his burglary convictions for sentencing purposes.[8] Appellant's merger argument is premised on the following language contained in the statute defining burglary:

_____

[8] "A claim that crimes should have merged for sentencing purposes presents a challenge to the legality of a sentence." **Commonwealth v. Ousley**, 21 A.3d 1238, 1242 (Pa. Super. 2011) (citation omitted).

**(d) Multiple convictions.--**A person may not be sentenced both for burglary and for the offense which it was his intent to commit after the burglarious entry or for an attempt to commit that offense, unless the additional offense constitutes a felony of the first or second degree.

18 Pa.C.S. § 3502(d).[9]

Here, Appellant maintains that his theft conviction in the case relating to his burglary of the Summerhill Borough Municipal Building (hereinafter "Summerhill case") should have merged with his burglary conviction in that case, because he entered the municipal building with the intent to commit a theft therein. The Commonwealth, however, contends that Appellant did not ultimately commit the *specific theft* that he intended when entering the building and, thus, his theft conviction should not merge. The Commonwealth explains that Appellant entered the municipal building with the intent to steal *special radios*, but he ultimately stole other, unrelated items. Therefore, according to the Commonwealth, merger was not required under section 3502(d).

We disagree. In support of its argument, the Commonwealth relies on **Commonwealth v. Couch**, 731 A.2d 136 (Pa. Super. 1999). There, Couch burglarized a Centre County home where her estranged boyfriend and their child lived. *Id.* at 139. Upon entering the home, Couch took the child and

---

[9] We note that the Commonwealth concedes that, "[o]ther than the burglary and criminal trespass charges, there were no charges against [Appellant] that were graded as a first or second degree felony." Commonwealth's Brief at 4.

then returned to her home in Philadelphia. *Id.* The following day, Couch informed her ex-boyfriend's attorney "that she had moved from her Philadelphia residence and no attempt should be made to find the child." *Id.* Stemming from this break-in, Couch was charged with burglary, interfering with the custody of a child, and concealing the whereabouts of a child. *Id.* After she was convicted of these offenses, the trial court imposed separate sentences for her convictions of burglary and concealing the whereabouts of a child. *Id.* at 144. On appeal, Couch argued that her conviction for concealing the whereabouts of a child should have merged with her burglary conviction. *Id.* This Court disagreed, concluding that "the underlying crime intended to be committed *within* the residence at the time of the burglary was interfering with the custody of a child, not concealing the whereabouts of the child." *Id.* at 144-45 (emphasis in original).

We fail to see how *Couch* supports the Commonwealth's position that Appellant's theft offense does not merge with his burglary conviction because he did not steal the *specific item* he intended to steal when burglarizing the Summerhill Borough Municipal Building. The *Couch* panel found that the conviction for concealing the whereabouts of a child did not merge with burglary because that offense was not intended to be committed *inside* the burglarized residence; instead, Couch entered the residence with the intent to commit the *separate* offense of interfering with the custody of a child. Here, there is no dispute that Appellant burglarized the municipal building with the intent to commit *a theft* inside that building. The fact of

what item(s) Appellant ultimately stole does not control the question of merger. Rather, the plain language of section 3502(d) requires merger of "the offense which it was [Appellant's] intent to commit after the burglarious entry…." 18 Pa.C.S. § 3502(d). Because it is clear that the offense that Appellant intended to commit inside the burglarized building was a theft, his conviction for that offense must merge with his burglary conviction in the Summerhill case.

For this same reason, Appellant's theft conviction in the South Fork Fire Department case (hereinafter "South Fork case") must also merge with his burglary conviction in that case.[10] However, Appellant further argues that his criminal mischief conviction in the South Fork case should have also merged with his burglary conviction because "the damage to the soda machine was done in an effort to steal the contents therefrom…." Appellant's Brief II at 11. This argument is unconvincing. There was no evidence that Appellant entered the South Fork Fire Department with the specific intent to commit criminal mischief; rather, he entered that building with the intent to commit theft. Appellant's act of causing damage to a soda

_____

[10] Indeed, the Commonwealth concedes this point in the brief it filed after reconsideration was granted by this panel (hereinafter, "Commonwealth's Brief II"). *See* Commonwealth's Brief II at 8.

machine during the course of committing that theft is punishable separately from his burglary offense.

In sum, Appellant has convinced us that both his theft conviction in the Summerhill case, and his theft conviction in the South Fork case, must merge with his burglary convictions in those cases. Because the court imposed separate sentences for those offenses, we are required to vacate Appellant's two sentences for theft and remand for resentencing.

In Appellant's next challenge to the legality of his sentence (issue IV, above), he argues that his conviction for criminal mischief in the case pertaining to the burglary of the Summerhill Fire Department building (hereinafter, "Summerhill Fire Department case") should have merged with his attempted burglary conviction in that case. Appellant maintains that merger of these two convictions is required under the 'elements-based test,' which directs that convictions merge when "two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other." ***Commonwealth v. Baldwin***, 985 A.2d 830, 833 (Pa. 2009); ***see also*** 42 Pa.C.S. § 9765 ("No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.").

Appellant offers scant discussion of how the elements of criminal mischief are included within the elements of attempted burglary, and we easily conclude that they are not. The criminal mischief offense for which Appellant was convicted required the Commonwealth to prove that Appellant "intentionally damage[d] real or personal property of another[.]" 18 Pa.C.S. § 3304(a)(5). Attempted burglary does not require an intent *to damage* real or personal property; instead, it requires an intent *to enter* a building for the purpose of committing a crime therein. **See** 18 Pa.C.S. § 3502(a). Accordingly, Appellant's criminal mischief conviction does not merge with his burglary conviction in the Summerhill Fire Department case.

In sum, we conclude that the trial court imposed illegal sentences for Appellant's theft convictions in both the Summerhill case (docketed at 1254-2014) and the South Fork case (docketed at 1256-2014). Thus, those sentences must be vacated. Appellant's remaining sentences are legal, including his sentence for criminal mischief in the Summerhill Fire Department case (docketed at 1257-2014). Nevertheless, we must vacate all of Appellant's sentences in each of his three cases, as our vacating his theft sentences upsets the trial court's overall sentencing scheme. **See**
**Commonwealth v. Thur**, 906 A.2d 552, 569-70 (Pa. Super. 2006) (stating

that if our disposition upsets the overall sentencing scheme of the trial court, we must remand so that the court can restructure its sentence plan).[11]

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/28/2017

---

[11] In light of this disposition, we need not address Appellant's challenge to the discretionary aspects of his sentence.